IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RAYMOND JAMES PHILLIPS, #291277, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:21-CV-177-RAH-CSC |
| ANTHONY J. HAIGLER, | ) ) ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.    INTRODUCTION**

Plaintiff Raymond James Phillips brings this *pro se* 42 U.S.C. § 1983 action alleging an incident of excessive force at Bullock Correctional Facility. Doc. 8.[1] Specifically, the Amended Complaint alleges that, on January 31, 2021, Plaintiff "made a statement" that Defendant Anthony J. Haigler "seemed like was wrong and in return jump[ed] on [Plaintiff]." *Id*. at 2, 3. As relief, Plaintiff seeks monetary damages and a public apology. *Id*. at 4.

On May 3, 2021, the Court issued an Order directing Defendant to file a Special Report addressing Plaintiff's claims (Doc. 9), which Defendant did on August 27, 2021 (Doc. 23). In his Special Report, Defendant seeks summary judgment and provides supporting evidentiary materials (Docs. 23-1 through 23-7). Later on August 27, 2021, the

---

[1] Upon screening Plaintiff's initial Complaint (Doc. 1), the Court found it contained deficiencies and ordered Plaintiff to file an amended complaint curing those deficiencies. *See* Doc. 7. The Court notified Plaintiff that the amended complaint would supersede the initial Complaint. *Id*. at 3. Thereafter, Plaintiff filed a timely Amended Complaint (Doc. 8), which is now the operative pleading in this action.

Court issued another Order directing Plaintiff to respond to Defendant's filings with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 24. The Court received Plaintiff's response on October 4, 2021. Doc. 27.

In its August 27, 2021 Order, the Court notified the parties that "the [C]ourt may at any time [after expiration of the time for Plaintiff to file a response] and without further notice to the parties (1) treat the [S]pecial [R]eport and any supporting evidentiary materials . . . as a motion for summary judgment, and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 24 at 3. Pursuant to that notice, the undersigned will now construe the Special Report as a motion for summary judgment and, for the reasons set forth below, RECOMMEND that judgment be GRANTED in favor of Defendant.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496

(11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

4

## III.  RELEVANT FACTS[2]

The following facts derive from Plaintiff's verified Amended Complaint (Doc. 8) and attachment thereto (Doc. 8-1) and the sworn or verified evidentiary materials attached to Defendant's Special Report (Docs. 23-1 through 23-7). Although Plaintiff filed a response to the Special Report (Doc. 27), the Court cannot consider any statements therein in deciding summary judgment because it is neither sworn nor verified in accordance with 28 U.S.C. § 1746. *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) ("Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment.") (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)).

Plaintiff's Amended Complaint provides only a single factual allegation: "I was living in (K) dorm when I made a statement in the dorm, in witch [sic] [Defendant] Haigler seemed like was wrong and in return jump on me." Doc. 8 at 2, 3. Attached to the Amended Complaint is the verified statement of inmate Frankie Pickett, who avers:

> On 1/31/21 at app. 6:00 pm in (K) dorm at Bullock Corr. Facility[,] [Defendant Haigler] came in and was hollering at the whole dorm, then he lefed [sic] and came back and he started to hit [Plaintiff] and other imnats [sic] and pepper spray them for no reason.

Doc. 8-1 at 2.

In response, Defendant provides evidence of the following version of events:

On January 31, 2021, while assigned as K dormitory rover, Defendant began his daily routine duties by searching the dormitory. Doc. 23-1 at 1; 23-6. While searching the

---

[2] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' . . . for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

5

dormitory, he noticed a mattress on the floor in the TV area. *Id*. Defendant asked the inmates in the dormitory who owned the mattress, and no one responded. *Id*. Defendant moved to confiscate the mattress, at which time Plaintiff grabbed one end of the mattress and stated, "Man[,] that mat is not fucking with you, leave folks shit alon[e]." *Id*. Defendant attempted to pull the mattress away from Plaintiff, at which time Plaintiff became irate and began to swing his closed fist, striking Defendant in the face. *Id*.

In response, Defendant struck Plaintiff with a "palm heel strike" to the face to increase his distance. Doc. 23-1 at 2; 23-6. Once separated from Plaintiff, Defendant unholstered his chemical agent and administered a burst to Plaintiff's face. *Id*. Nevertheless, Plaintiff continued toward Defendant and wrestled him to the floor. *Id*. An assisting officer, Officer Crimes, called a "Code Red" via handheld radio. *Id*. Officer Crimes then attempted to restrain Plaintiff and was struck in the face and grabbed from behind by several unidentified inmates. *Id*. The shift supervisor then arrived, and several inmates disbursed from the scene to the back of the dormitory. *Id*. Plaintiff and Defendant remained tussling on the floor. Doc. 23-6. The supervisor ordered Plaintiff to release Defendant, at which point Plaintiff complied. Doc. 23-1 at 2; 23-6.

After the altercation, Plaintiff, Defendant, and Officer Crimes were all taken to the infirmary for body charts. *Id*. Plaintiff's body chart indicates that he suffered a busted lip, a nodule on one side of his head, and swelling on one side of his back. Doc. 23-5. Defendant's body chart indicates that he suffered a cut to his hand, red, burning eyes, and a burning face. Doc. 23-4 at 1. Defendant reported that an "[i]nmate hit [him] in the face."

*Id*. Officer Crimes' body chart indicates that he suffered facial pain and bruising to his face and lip. *Id*. at 2.

## IV. DISCUSSION

### a. To the extent Plaintiff seeks monetary damages from Defendant in his official capacity, Defendant is entitled to sovereign immunity.

Official capacity suits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). The Eleventh Circuit has specifically recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Plaintiff seeks monetary damages from Defendant in his official capacity, Defendant is entitled to sovereign immunity.[3] *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995).

---

[3] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Carr*, 916 F.2d at 1525 n. 3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983.").

7

**b.     Plaintiff has failed to establish a genuine issue of material fact as to an Eighth Amendment excessive force claim.**

To succeed on an Eighth Amendment excessive force claim, Plaintiff must demonstrate that force was applied "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (citation omitted); *see also Hudson v. McMillian*, 503 U.S. 1, 8 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, the Court considers the following five factors:

> (1) the extent of the injury, (2) the need for application of force, (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, (4) the relationship between the need and the amount of force used, and (5) any efforts made to temper the severity of a forceful response.

*Hall v. Santa Rosa Corr. Inst.*, 403 F. App'x 479, 481 (11th Cir. 2010) (citing *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999)). Under this analysis, Plaintiff may avoid summary judgment "only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain." *Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987).

The Eleventh Circuit has specifically recognized that, when evaluating whether a particular use of force was excessive, courts must "give broad deference to prison officers acting to preserve discipline and security." *Jean-Denis v. Mason*, 857 F. App'x 495, 499 (11th Cir. 2021) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990)). Additionally, "prison officers generally are authorized to use force when a prisoner

8

repeatedly fails to obey an order." *Jean-Denis*, 857 F. App'x at 499 (citing *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008)); *see also Sears v. Roberts*, 922 F.3d 1199, 1209 (11th Cir. 2019). "Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (citing *Danley*, 540 F.3d at 1307).

The evidence before the Court fails to demonstrate that Defendant applied force maliciously and sadistically for the very purpose of causing harm. *See Whitley*, 475 U.S. at 320–21. As an initial matter, Plaintiff's evidence consists of only two conclusory, unsupported statements that Defendant "jump[ed] on [him]" (Doc. 8 at 2, 3) and "hit [him] and other imnats [sic] and pepper spray them for no reason" (Doc. 8-1 at 2). However, the Eleventh Circuit "has consistently held that conclusory allegations without *specific* supporting facts have no probative value." *See Owens v. Sec'y of Fla. Dep't of Corr.*, 812 F. App'x 861, 870 (11th Cir. 2020) (emphasis added) (citing *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000)); *see also Hogan v. Johnson*, No. 5:17-CV-1022, 2017 WL 6102818, at *2 (N.D. Ala. Oct. 17, 2017) (explaining that plaintiff's conclusory assertions that defendants "wrongfully assaulted" him and "purposefully used excessive force" against him were insufficient to state an excessive force claim).

Indeed, Plaintiff has wholly failed to refute Defendant's evidence that Plaintiff (1) grabbed the mattress[4] in Defendant's hands, cursed at Defendant, and told him to "leave

---

[4] In his response to the Special Report, Plaintiff states that Defendant's affidavit is accurate except that "there was no mattress in this said inadent [sic]." Doc. 27 at 2. As previously noted, Plaintiff's response is neither sworn nor verified in accordance with 28 U.S.C. § 1746 and, thus, cannot serve to create a disputed issue of fact. Regardless, the presence or absence of a mattress is immaterial to the outcome of this Recommendation, and Plaintiff admits that the rest of Defendant's statement is true.

folks shit alon[e]"; (2) became irate and swung a closed fist at Defendant, striking Defendant in the face; (3) continued toward Defendant and wrestled him to the floor, even after Defendant struck Plaintiff and administered a burst of chemical agent to Plaintiff's face; (4) resisted restraint by Officer Crimes with the help of other inmates; and (5) tussled with Defendant on the floor. Docs. 23-1, 23-6. Upon consideration of these facts and the above five factors, the record fails to demonstrate that Defendant's conduct rose to the level of "wantonness in the infliction of pain." *See Brown*, 813 F.2d at 1188.

      The Court will assume, for purposes of this Recommendation, that the first factor—the extent of Plaintiff's injury—weighs in Plaintiff's favor. However, the other four factors weigh plainly in favor of Defendant. As to the second factor, there was a clear need for application of force, as Plaintiff does not refute that he attempted to take the mattress from Defendant; cursed at Defendant; became irate and struck Defendant in the face with a closed fist; continued advancing toward Defendant despite Defendant's preventative measures; and wrestled Defendant to the floor. *See, e.g., Sears*, 922 F.3d at 1209 ("Given [plaintiff's] admitted failure to obey commands and his resistance to being handcuffed, *some* use of force was necessary to maintain or restore order.").

      As to the third factor, Plaintiff posed a reasonably perceived threat to the safety of staff and other inmates, as the undisputed record once again demonstrates that he was irate and repeatedly physical with Defendant; that he resisted restraint by Officer Crimes; and that multiple other inmates engaged in the altercation, striking Officer Crimes in the face and grabbing him from behind. As to the fourth factor, the record fails to demonstrate that the need for force and the amount used were disproportionate. Although it is undisputed

10

that Defendant struck Plaintiff and administered a burst of chemical agent to Plaintiff's face, it is further undisputed that this occurred only *after* Plaintiff became irate and struck Defendant in the face with a closed fist. *See Bennett*, 898 F.2d at 1533 ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."). The record does not indicate that Defendant struck Plaintiff more than once or any more forcefully than was necessary to subdue Plaintiff, who continued to advance on Defendant after the fact. As such, the evidence fails to "go[] beyond a mere dispute over the reasonableness of the force used." *See Brown*, 813 F.2d at 1188.

Finally, as to the fifth factor, the record demonstrates that efforts were made to temper the severity of a forceful response. First, Defendant attempted to pull the mattress away from Plaintiff without force. Thereafter, when Plaintiff became angry and struck Defendant, Defendant responded by only striking Plaintiff once and administering one burst of chemical agent. Then, Officer Crimes attempted to restrain Plaintiff without further force, which Plaintiff resisted. Thus, numerous attempts were made to restore order and enforce compliance without use of force. Moreover, after force was used, Plaintiff was immediately escorted to the infirmary for examination. *See Natty v. Walrath*, No. 7:11-CV-27, 2012 WL 2573434, at *6 (M.D. Ga. June 12, 2012) ("Defendants attempted to temper the severity of a forceful response by providing several verbal commands to Plaintiff . . ., by using the smallest amount of force possible, and by providing Plaintiff with medical treatment following the use of force.").

Because Plaintiff does not refute Defendant's evidence that he was irate, aggressive, physically threatening, and repeatedly non-compliant throughout the altercation at issue, the Court cannot find that the force used by Defendant violates the Eighth Amendment. Even acknowledging that Defendant struck Plaintiff and sprayed him with chemical agent, that does not, under these circumstances, rise to the level of an Eighth Amendment violation. *See Burke v. Bowns*, 653 F. App'x 683, 696 (11th Cir. 2016) (finding use of pepper spray did not violate the Eighth Amendment because it was done to restore discipline) (citing *Danley*, 540 F.3d at 1307 ("readily" concluding that the use of pepper spray following a prisoner's second failure to obey an officer's order to return to his cell was constitutional)).

The evidence as a whole simply does not reflect that Defendant applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline."[5] *See Whitley*, 475 U.S. at 320–21; *Hudson*, 503 U.S. at 8. Accordingly, because Plaintiff has failed to demonstrate excessive force in violation of the Eighth Amendment, Defendant is entitled to summary judgment on this claim.

---

[5] Although the third-party statement attached to Plaintiff's Amended Complaint claims that Defendant struck and pepper sprayed Plaintiff "for no reason" (Doc. 8-1 at 2), the undersigned finds that this single statement—absent any factual detail or evidentiary support and in light of the unrefuted evidence proffered by Defendant—is insufficient to defeat summary judgment. *See Walker*, 911 F.2d at 1577 ("A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."); *Demps v. Hillsborough Cnty. Clerk of the Ct.*, No. 8:18-CV-742, 2019 WL 5080486, at *3 (M.D. Fla. Oct. 10, 2019) ("Plaintiff's single allegation in her affidavit constitutes a 'mere scintilla' of evidence [that] is insufficient to defeat summary judgment.") (citation omitted).

## V. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that:

1. Defendant's Special Report (Doc. 23), which the Court construes as a motion for summary judgment, be GRANTED;

2. Judgment be ENTERED in favor of Defendant; and

3. This case be DISMISSED with prejudice.

It is further ORDERED that, on or before **February 5, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 22nd day of January, 2024.

/s/ Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE